IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| KHIRY BROUGHTON, a/k/a | ) | No. 2:16-cr-00122-DCN |
| "KBLACKA," DASHAWN TREVELL | ) | |
| BROWN, a/k/a "SHAWNY," CLYDE | ) | **ORDER** |
| NAQUAN HAMPTON, a/k/a "ONE | ) | |
| LOYAL SHOOTER," ZAQUANN | ) | |
| ERNEST HAMPTON, a/k/a "TOB," | ) | |
| MATTHEW RASUAUN JONES, a/k/a | ) | |
| "BOOGIE MAC," CHRISTOPHER | ) | |
| SEAN BROWN, a/k/a "ROUGHISH," | ) | |
| BRYANT JAMEEK DAVIS, a/k/a | ) | |
| "SAVO,' WILLIAM LAMONT COX, | ) | |
| a/k/a "WATAZ," and QUINTIN JOHN | ) | |
| FISHBURNE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on the sentencing of Clyde Naquan Hampton ("Hampton"). In this sentencing, there is a dispute over whether the offense conduct satisfies the cross-reference for attempted first-degree murder under U.S.S.G. § 2A2.1(a)(2). The court finds that it does. Next, Hampton asks for a variance based primarily on the sentence disparity created by the prevalence of 11(c)(1)(c) pleas among the defendants in this case, namely the 108-month sentence, which is below the range prescribed by the United States Sentencing Guidelines ("Guidelines"), that was imposed upon Khiry Broughton ("Broughton"), the leader of the gang that both Brown and Broughton belonged to, the Cowboys. The court denies Hampton's request for a below-Guidelines sentence.

1

## I. BACKGROUND

Hampton was indicted with a host of federal offenses relating to his alleged involvement with a Walterboro, South Carolina based criminal organization known as the "Cowboys." The Cowboys are described as a neighborhood gang which encourages members to engage in criminal activity to increase their status within the gang, and demands lifetime allegiance, disciplining disloyal members with threats, violence, and even death. The indictment also mentions a separate, but allied, gang known as the "Wildboyz" who allegedly share common interests with the Cowboys and act in conjunction with the Cowboys to commit crimes to increase the status of members of both gangs. The Cowboys and Wildboyz are each alleged to have engaged in violence, threats of violence, drive-by shootings, home invasion robberies for the purposes of obtaining narcotics and cash, and narcotics distribution.

Hampton pleaded guilty to conspiracy to conduct racketeering. A presentence investigation report ("PSR") was prepared in this case. Both Hampton and the government submitted objections to the PSR. The parties also submitted sentencing memoranda. Because this sentencing presents complex issues of law and fact, the court issues this written order to detail the particularized findings that contributed to the court's calculations. It does not modify the sentence or its foundation.

## II. DISCUSSION

### A. Base Offense Level

Hampton has entered a guilty plea to racketeering conspiracy, in violation of 18 U.S.C. §§ 1961 and 1962(d). Hampton admitted to participating in a number of shootings committed on behalf of the Cowboys. On July 6, 2010, Hampton was at a park

in Summerville, South Carolina when he became involved in an altercation with other individuals. During the course of the altercation, Hampton threw up a "b" hand sign, made a statement to the victims that "Walterboro runs this," and then fired shots at the victims. On July 10, 2010, Hampton was involved in a shooting of a rival gang member in Walterboro. On May 30, 2013, Hampton participated in a drive-by shooting on May 30, 2013 at the residence of 62 Jared Road, Walterboro, South Carolina, a residence where suspected members of the rival Dooley Hill gang lived. Hampton drove the car as Cowboyz members and codefendant Matthew Rashaun Jones ("Jones") and Cowboyz member and codefendant Christopher Sean Brown fired multiple shots at the residence. There is a dispute over whether the offense conduct satisfies the cross-reference for attempted first-degree murder under U.S.S.G. § 2A2.1(a)(2). The court finds that it does.

Under 18 U.S.C.A. § 1111(a), to convict a defendant of first-degree premeditated murder the government must prove that defendant "in some sort associate[d] himself with the venture, that he participate[d] in it as in something that he wishe[d] to bring about, that he [sought] by his action to make it succeed." United States v. Horton, 921 F.2d 540, 543 (1990) (internal quotation marks omitted). Hampton's actions in participating in various drive-by shootings and shootings of rival gang members, including the drive-by shooting into the residence at 62 Jared Road where members of rival gang members lived on May 30, 2013 indicate that Hampton planned with his fellow Cowboyz gang members to kill someone, namely the rival gang members. Under 18 U.S.C.A. § 1111(a), first-degree murder is defined as the unlawful killing of a human being with "malice aforethought," which includes every murder that is a "willful, deliberate, malicious, and premeditated killing."

In United States v. Diaz, 176 F.3d 52 (2d Cir. 1999), the court held that a cross-reference to first-degree murder was appropriate where other members of defendant's gang planned to shoot at one person but other, innocent bystanders were killed while gang members were shooting up a street. Here, Hampton planned to kill the rival gang members at 62 Jared Road. Indeed, even though Hampton did not actually shoot out of the car, the cross-reference for attempted first-degree murder would likely still apply. In Puckett v. Costello, 111 F. App'x 379 (6th Cir. 2004), the court held that a defendant who was not the actual shooter in a drive-by shooting demonstrated requisite "premeditated and deliberate intent to kill" sufficient to affirm a conviction of first-degree murder under Michigan law. While Puckett was not interpreting first-degree murder under 18 U.S.C.A. § 1111(a), Michigan law defines first-degree murder in a similar manner, as when a defendant has a "premeditated and deliberate intent to kill." In Puckett, the defendant was a member of the Insane Gangster Mafia. At some point on the evening of November 9, 1995, the defendant and some of his fellow gang members began discussing a rival gang, the Cash Flow Posse, and the possibility of a drive-by shooting. The members of the Insane Gangster Mafia then planned a drive-by shooting at the home of a suspected Cash Flow Posse member. During the course of the drive-by shooting, where defendant was sitting in the car, a bystander was shot and killed. The Puckett court affirmed the first-degree murder conviction, finding that defendant's intent to kill rival gang members was sufficient to conclude that at least one gang member in the car at the time possessed the requisite intent to kill. The Puckett court reasoned that these actions were more in line with an intent to shoot at particular people as opposed to recklessly shooting at the apartment building. Similarly, Hampton and other members of

the Cowboy gang had the intent to shoot members of the rival gang, which is why they targeted the home at 62 Jared Road on May 30, 2013, the shooting at the park in Summerville, South Carolina on July 6, 2010, and the shooting of a rival gang member on July 12, 2010. This was a shooting directed at one or more persons, as opposed to a shooting aimed at a building.

For the foregoing reasons, the court finds that the cross-reference for first-degree murder is appropriate.

**B.    Variance**

Next, Hampton asks for a below-Guidelines sentence. Specifically, Hampton asks the court to impose a sentence of 108 months, which is the same as the sentence imposed upon Broughton.

In fashioning an appropriate sentence, judges are directed by statute to consider "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). But as courts have observed, this provision is "primarily aimed at national disparities, rather than those between co-defendants." United States v. Rivera–Gonzalez, 626 F.3d 639, 648 (1st Cir. 2010). Hampton has presented no evidence that similarly-situated defendants—those who have been convicted of a RICO conspiracy where the underlying offense consists of drive-by shootings and retaliatory shooting—have received a sentence of 108 months.

The court had no discretion in modulating the sentence of Broughton, as accepting Broughton's guilty plea bound the court to the 11(c)(1)(C) guilty plea itself, and there was no way to reject the plea even given the development of facts in

5

Broughton's PSR. "A plea agreement under Rule 11(c)(1)(C), like all plea agreements, is binding on both the government and the defendant, but Rule 11(c)(1)(C) plea agreements are unique in that they are also binding on the court after the court accepts the agreement." United States v. Kling, 516 F.3d 702, 704 (8th Cir. 2008); see also United States v. Pacheco-Navarette, 432 F.3d 967, 972 (9th Cir. 2005) ("[T]he district court is not permitted to deviate from . . . sentences stipulated in [Rule 11(c)(1)(C) ] agreements.").

The court agrees that the prevalence of 11(c)(1)(C) pleas among the defendants in this case has made for sentencing disparities among otherwise similarly-situated defendants. But this disparity is not because of the court's differential application of the Guidelines. Broughton's sentence did not result from a proper application of the Guidelines, but that is because, as the court in United States v. Powell, 347 F. App'x 963, 965 (4th Cir. 2009) reiterated, a sentence imposed pursuant to a Rule 11(c)(1)(C) plea agreement is "contractual and not based upon the [Sentencing] guidelines." The court will not now decrease the sentence of Hampton to make it in line with the sentence of Broughton.

The court acknowledges that it has the discretion to align codefendants' sentences to reflect comparable degrees of culpability. But the difference between Hampton's circumstance and those of Broughton is the presence of the contract-like 11(c)(1)(C) plea that the court is bound by.

The court finds that the disparity in sentencing between Hampton and Broughton is not a reason to impose a sentence of 108 months on Hampton. As already discussed, the guidelines range as calculated by the parties is not binding upon the court, and the

court has calculated a different guidelines range. To promote respect for the law, reflect seriousness of the offense, satisfy general deterrence, and deter Hampton from future offenses, the court imposes a sentence of 151 months. Such a sentence is "sufficient, but not greater than necessary" to fulfill the purposes of sentencing. 18 U.S.C. § 3553(a).

## IV. CONCLUSION

For the foregoing reasons, the court applies the first-degree attempted murder cross-reference. Further, the court denies Hampton's request for a variance. The court imposes a sentence of 151 months.

**AND IT IS SO ORDERED**.

---
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**June 22, 2018**
**Charleston, South Carolina**